UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JAMES GRAHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:16-CV-00067-ERW |
| ) | |
| SHERIFF STEPHEN KORTE, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Joint Motion for Summary Judgment by Defendants Sheriff Stephen Korte, Major Josh Baker, Deputy Justin Sheppard, Deputy Brenden McPike, and Detective Joseph Minor (ECF No. 46) and Plaintiff James Graham's Motion for Partial Summary Judgment (ECF No. 49).

## I. BACKGROUND

Plaintiff James Graham ("Plaintiff") initiated this lawsuit by filing a Complaint in this Court on September 28, 2016, against Defendants Sheriff Stephen Korte, Major Josh Baker, Deputy Justin Sheppard, Deputy Brenden McPike, and Detective Joseph Minor (collectively "Defendants"). Plaintiff alleged Defendants conducted an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution. (Compl. ¶¶ 38-49, ECF No. 1) On July 31, 2019, Defendants filed their Joint Motion for Summary Judgment, and Plaintiff filed his Motion for Summary Judgment on that same date. The Court held a hearing on the cross-motions for summary judgment on October 3, 2019.

## A. Uncontroverted Facts[1]

The Court's recitation of the facts pertaining to Plaintiff's sole claim of unconstitutional search and seizure is taken from Plaintiff's Complaint, the parties' statements of Uncontroverted Material Facts and responses thereto, and the evidence presented in the record. Plaintiff resides in Pike County, Missouri. (Defs.' Statement of Uncontroverted Material Facts ["SUMF"] ¶ 1, ECF No. 48) Defendant Stephen Korte ("Korte") is the Sheriff of Pike County, Missouri. (*Id.* at ¶ 2) The other named Defendants are employed as Deputy Sheriffs of the Pike County Sheriff's Department ("PCSD"). (*Id.* at ¶¶ 3-6) On January 14, 2016, PCSD Officers, including Defendants Josh Baker ("Baker") and Brenden McPike ("McPike"), executed a search warrant at Plaintiff's residence but did not arrest Plaintiff. (Pl.'s SUMF ¶¶ 8-9, ECF No. 51)

Prior to this date, Defendant Joseph Minor ("Minor") received information from individuals that Plaintiff used crack cocaine in his home. (Defs.' SUMF ¶ 7; Minor Dep. 6:24-9:14, 10:11-11:19, 11:20-14:9, 15:6-17:3, 27:1-29:17, ECF No. 48-3) On January 12, 2016, Defendant Minor shared the information regarding Plaintiff's alleged use of crack cocaine with Defendant Baker.[2] (Defs.' SUMF ¶ 8; Baker Dep. 7:21-8:9, ECF No. 48-2; Minor Dep. 6:1-8)

---

[1] Many of the facts Plaintiff deems controverted are neither denied as to the specific fact nor supported by specific controverted evidence in the record. Further, Plaintiff has failed to respond to paragraphs 16-19 and 21-22 of Defendants' Statement of Uncontroverted Material Facts. Under Local Rule 4.01, "[a]ll matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D. Mo. L.R. 4.01(E). To the extent Plaintiff fails to specifically controvert Defendants' statement of facts, as will be developed in the above section titled "Uncontroverted Facts," the Court deems those facts admitted.

[2] Plaintiff disputes this fact only on the basis that no records exist, which Defendants have conceded, and does not specifically controvert Defendants' affidavits that Defendant Minor received and shared said information. Further, in his supplemental SUMF, Plaintiff states, Defendant "Minor investigated and shared all his 'information' with [B]aker." (Pl.'s Supp. SUMF ¶ 2(a), ECF No. 56)

However, Defendants have no written or recorded statements relating to Plaintiff's alleged use of crack cocaine prior to the execution of the search warrant. (Pl.'s SUMF ¶ 22(a))

On January 13, 2016, Defendants Baker, Minor, and McPike traveled to Plaintiff's residence and conducted a trash pull of an outside trash container.[3] (Defs.' SUMF ¶ 10) Defendant McPike opened a bag and began looking through it. (McPike Dep. 15:1-8, ECF No. 51-8) He did not dump out the contents as he had done in his five previous trash pulls. (*Id.* at 15:9-16:25) Defendant McPike located a quart size glass jar with a white residue in the trash collected from the container at the curb of Plaintiff's residence.[4] (Defs.' SUMF ¶ 12) Defendants Baker and Minor conducted three field tests with NARTEC field test kits, and all three tests yielded positive results for the presence of cocaine.[5] (Minor Aff. ¶ 7, ECF No. 53-1) Defendant McPike did not see any pictures or video of the glass jar taken in the sally port where the trash pull was conducted. (McPike Dep. 24:8-25:15) However, PCSD maintained a chain of custody and photographs for the glass gar and residue recovered from the trash pull. (Minor Aff. ¶ 5, 12) The three residents of Plaintiff Graham's residence deny putting the items in the trash container. (Pl.'s Suppl. SUMF ¶ 4)

---

[3] In his response to Defendants' SUMF, Plaintiff denies this fact because there is no documentation showing the event occurred. (ECF No. 54 ¶ 10) However, in Plaintiff's SUMF, he admits there was a trash pull at his residence. (Pl.'s SUMF 22(c), (e)-(g)). The record, including Plaintiff's SUMF and briefs in support of his motion for summary judgment and in opposition to Defendants' motion for summary judgment, shows that a trash pull of a trash container outside Plaintiff's house did occur.

[4] While Plaintiff contests this fact, he merely does so on the basis that the quart-sized glass jar was never in the house or placed in the trash by residents of the house. (Pl.'s Supp. SUMF ¶ 4) Nothing in Plaintiff's denial contests Defendant McPike located the glass jar with white residue in the trash container located outside Plaintiff's residence.

[5] Plaintiff does not dispute that the officers' field tests were positive for cocaine. Instead he claims photographs of the field test viewed by a third-party officer indicated a color similar to common household cleaning agents. (Pl.'s SUMF ¶ 24; Vanhooser Aff. ¶¶ 4-8, ECF No. 51-13).

3

On January 13, 2016, Defendant Baker prepared an affidavit for Search Warrant for Plaintiff's residence and submitted the affidavit to the Pike County Prosecuting Attorney, who then presented a Search Warrant Application, including Defendant Baker's affidavit, to the Pike County Circuit Court. (Defs.' SUMF ¶¶ 14-15) On that same date, Judge David H. Ash, Associate Circuit Judge of the Circuit Court of Pike County, Missouri issued a search warrant for Plaintiff's residence. (Defs.' SUMF ¶ 15; Warrant, Defs.' Ex. G, ECF No. 48-7) Defendant Baker later submitted a revised affidavit after realizing he inadvertently wrote Defendant Sheppard, instead of McPike, accompanied Defendants Baker and Minor to conduct the trash pull. (Defs.' SUMF ¶¶ 16-18) The affidavit states in pertinent part:

> On January 12, 2016 I received information that Jim Graham regularly uses crack cocaine at his residence in Clarksville, MO. The information is that the cocaine is obtained from Louisiana, MO.
>
> At 5:24 P.M. on January 12, 2016 Detective Minor, Deputy Sheppard, and I traveled to **707 South Second Street, Clarksville, MO** to observe where the trash was located at the home. The trash was sitting at the left side of the front porch.
>
> At 01:00 A.M. on January 13, 2016 Detective Minor, Sgt. McPike, and I traveled to **707 South Second Street, Clarksville, MO**. The trash and trashcan had been moved from beside the porch to the front of the home and was abandoned by the curb. I served as lookout as Detective Minor approached the home. I took a photograph of Detective Minor as he removed three white trash bags as they had been abandoned by the curb within a place accessible to anyone.
>
> At the Pike County Sheriff's Office the following items were found within the trash pulled from **707 South Second Street, Clarksville, MO**:
>
> 1. **One quart-sized glass container with a large amount of white residue. The residue was field tested three times and displayed a positive presence of cocaine three times. It is believed that the glass container was used to produce crack cocaine from powder cocaine. The glass container also has two visible fingerprints. The glass container will be sent to the Missouri State Highway Patrol Crime Lab to verify the presence of cocaine as well as identifying the visible fingerprints.**
>
> 2. **U.S. Mail addressed to [REDACTED] 707 SOUTH2ND, CLARKSVILLE, MO, 63336**

(Defs.' Ex. G p. 6, ECF No. 48-7)

On January 14, 2016, the Pike County Prosecuting Attorney presented a Search Warrant Application which included Defendant Baker's revised affidavit to the Pike County Circuit Court. (Defs.' SUMF ¶ 19) Judge Ash issued a search warrant for Plaintiff's residence. (*Id.*) The search warrant stated, "[u]pon the sworn complaint made before me there is probable cause to believe that the crimes of possession of controlled substances, including but not limited to cocaine, have been committed and that evidence of that crime . . . ." (Warrant, Defs.' Ex. G p. 1) That night at approximately 8:30 p.m., PCSD Officers, including Defendants Baker and McPike executed the search warrant at Plaintiff's residence. (Defs.' SUMF ¶ 20; Pl.'s SUMF ¶ 8) The Officers seized six items including a W-2 form belonging to Plaintiff, a pill bottle belonging to a co-inhabitant, a white pill labeled M367, a black plastic tray with a leafy substance, an envelope belonging to a co-inhabitant, and a syringe. (Defs.' SUMF ¶ 23; Defs.' Ex. G p. 4) Plaintiff was not arrested. (Defs.' SUMF ¶ 24; Pl.'s Response ¶ 18)

PCSD Officers sent the jar and white residue to the Missouri State Highway Patrol for a lab test, and the test came back negative for the presence of cocaine. (Defs.' SUMF ¶ 25; Pl.'s SUMF ¶ 11) The PCSD also sent the jar to the FBI crime lab in Quantico, Virginia. (Pl.'s SUMF ¶ 12) The general chemistry report indicated the jar was better suited for examination in the Trace Evidence Unit. (Pl.'s Ex. 3, ECF No. 51-4) Defendants did not submit a probable cause statement to the Prosecutor, nor were any charges filed against Plaintiff. (Defs.' SUMF ¶ 26) Defendants Minor and Korte did not participate in the search of Plaintiff's residence, and Defendant Sheppard was at the scene but remained in the car. (*Id.* at ¶¶ 27-29) Defendant Korte is the final policy maker of the PCSD, but he does not have an official policy directing his

deputies to submit affidavits containing false statements. (Pl.'s Supp. SUMF ¶ 5; Defs.' SUMF ¶ 30)

After the aforementioned events, Defendants recorded conversations with two corroborating witnesses regarding Plaintiff's alleged use of crack cocaine, and neither recording mentions the use of crack cocaine at Plaintiff's residence. (Pl.'s SUMF ¶ 15(a)-(c)) In addition, witness David L. Minor did not say he saw Plaintiff using crack cocaine but told Defendant Minor an unidentified person observed Plaintiff using crack cocaine. (Pl.'s SUMF ¶ 16(e); Minor Dep. 17:19-18:25) Defendant Baker was unaware of any instances in which David L. Minor saw Plaintiff using crack cocaine, and Defendant Baker did not interview cooperating individual David L. Minor, Benny Church, or Michael Starman. (Pl.'s SUMF ¶¶ 17(a)-(d)) Defendant Minor did not inform Defendant Baker that David L. Minor did not personally know Plaintiff regularly used crack cocaine and instead heard it from an unidentified source. (*Id.* at ¶ 18(a)) Further, Defendant Minor had no documentation or recorded statements from Cooperating Individuals Tiffany Silva and Leroy Farris prior to the execution of the search warrant. (*Id.* at ¶ 18(b))

Prior to the January 2016 events, on December 3, 2015, Defendant Baker knowingly made a false police report to the City of Louisiana Police Department. (Pl.'s SUMF ¶ 17(e)) Judge Ash was unaware of the false police report called in by Baker and would have liked to have known about the call. (Pl.'s SUMF ¶ 23(b); Ash Dep. 27:5-28:5, ECF No. 51-10)) Judge Ash also stated Baker swore under oath in the affidavit that the facts he laid out were true, and Judge Ash thought the facts were sufficient to issue a warrant. (Ash Dep. 28:5-10)

On September 28, 2016, Plaintiff filed a single count Complaint under 42 U.S.C. § 1983 alleging Defendants violated his Fourth Amendment rights by conducting an unreasonable

6

search and seizure at Plaintiff's residence on January 14, 2016. (Compl., ECF No. 1) Specifically, Plaintiff alleges Defendant Baker, with the knowledge and consent of the other Defendants, filed a false affidavit in support of the search warrant such that the search was unreasonable. (*Id.* at ¶¶ 24, 27-28, 38-41) Plaintiff maintains the search was conducted because Defendants perceived Plaintiff as a political threat to their interests in the reorganization of the City of Louisiana, Missouri Police Department. (*Id.* at ¶ 19) The Complaint names Defendant Korte in his individual and official capacities, and the remaining Defendants Baker, Sheppard, McPike, and Minor in their individual capacities. (*Id.* at ¶¶ 8-18) Plaintiff seeks damages for property damage, psychological and emotional injury, humiliation, embarrassment, lost wages, costs and expenses, and attorneys' fees. Plaintiff also seeks punitive damages against the individually named Defendants. The parties have filed cross-motions for summary judgment.

## B.  Legal Standard

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Fed. R. Civ. P. 56(c)(2))**.** "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party has the initial burden to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.,* 838 F.2d 268, 273 (8th Cir. 1988); *see also Torgerson*, 643 F.3d at 1042. To meet this burden, the movant must inform the district court of the basis for the motion "and must identify 'those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson*, 643 F.3d at 1042 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). When the movant meets this burden, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec.*, 475 U.S. at 587). Conclusory allegations are insufficient to establish a material question of fact required to defeat summary judgment. *Boude v. City of Raymore, Missouri*, 855 F.3d 930, 935 (8th Cir. 2017); *Quinn v. St. Louis Cty.*, 653 F.3d 745, 752 (8th Cir. 2011).

## II. DISCUSSION

In their motion for summary judgment, Defendants claim they are entitled to qualified immunity on Plaintiff's claim against them in their individual capacities because they conducted a search and seizure pursuant to a search warrant issued by the Pike County Circuit Court, and they acted reasonably in relying on the determination of a neutral and detached judicial officer that probable cause existed for the search warrant to issue. Further, Defendants Korte, Minor,

and Sheppard claim they are entitled to qualified immunity for the additional reason that they did not participate in the search and seizure of Plaintiff's residence. Finally, Defendant Korte contends he is entitled to summary judgment in his official capacity because the alleged unconstitutional acts of the PCSD officers did not result from an official policy or custom set by Korte.

Plaintiff, on the other hand, argues he is entitled to summary judgment because the affidavit submitted as part of the search warrant application was constitutionally insufficient on its face under *Franks v. Delaware*, 438 U.S. 154 (1978). Plaintiff contends Defendant Baker, the affiant, failed to inform the magistrate judge that he had recently filed a false police report; the affidavit contained intentional misstatements of facts and outright falsehoods; and the affidavit contained bare-bones conclusory statements lacking sufficient facts to support a finding of probable cause to issue a search warrant.

## A. Qualified Immunity for Defendants in their Individual Capacities

In his Complaint, Plaintiff asserts he was subjected to an unreasonable search and seizure in violation of the Fourth Amendment because the warrant authorizing the search was not supported by probable cause. Defendants argue they are entitled to qualified immunity in their individual capacities on Plaintiff's claim because the officers acted in an objectively reasonable manner in obtaining and executing the search warrant. Plaintiff responds Defendants are liars, and liars are not entitled to qualified immunity. (Pl.'s Mem. in Opp. p. 1, ECF No. 55)

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a constitutional right committed by a person acting under color of state law." *Andrews v. City of W. Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006) (citations omitted). Plaintiff asserts the allegedly false affidavit, issuance of the search warrant, and Defendants' subsequent search and

seizure of Plaintiff's residence violated his right to be free from unreasonable searches and seizures under the Fourth Amendment. "The Fourth Amendment protects 'persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Hansen v. Black*, 872 F.3d 554, 558 (8th Cir. 2017) (quoting U.S. Const. amend. IV).

"Qualified immunity protects governmental officials from liability for civil damages if they have not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

To determine whether government officials are entitled to qualified immunity, courts consider two factors: "(1) whether the facts alleged, construed in the light most favorable to [the plaintiff], establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that her actions were unlawful." *Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011) (citation omitted). The courts have discretion to decide which of the two prongs should be addressed first. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). "'If either question is answered in the negative, the public official is entitled to qualified immunity.'" *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (quoting *Vaughn v. Ruoff*, 253 F.3d 1124, 1128 (8th Cir. 2001)). "Although qualified immunity is an affirmative defense, the burden is on the plaintiff to plead, *and*, if presented with a properly supported motion for summary judgment, to present evidence

from which a reasonable jury could find that the defendant officer has violated the plaintiff's constitutional rights." *Moore v. Indehar*, 514 F.3d 756, 764 (8th Cir. 2008) (Beam, J., dissenting). "A defendant official is entitled to summary judgment, if the record, when viewed in the light most favorable to the plaintiff, the non-moving party, reveals that there is no genuine issue as to any material fact regarding the immunity issue and that the defendant is entitled to judgment as a matter of law." *Walden v. Carmack*, 156 F.3d 861, 868 (8th Cir. 1998).

First, the Court finds the law is clear that "[a] reasonable officer would know that it is unlawful to use deliberate or reckless falsehoods in a probable cause hearing, and therefore, Plaintiff's right to be free from such conduct by officers was 'clearly established,' fulfilling part of the qualified immunity test." *Odom v. Kaizer*, 864 F.3d 920, 922–23 (8th Cir. 2017) (quoting *Bagby v. Brondhaver*, 98 F.3d 1096, 1098-99 (8th Cir. 1996)).

With respect to reasonableness, where an alleged violation of the Fourth Amendment "involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner . . . ." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). However, the inquiry into objective reasonableness does not end with the fact a neutral magistrate issued a warrant authorizing an allegedly unconstitutional search or seizure. *Id.* at 547. Officers are not shielded by qualified immunity where "'it is obvious that no reasonably competent officer would have concluded that a warrant should issue' . . . for example, where the warrant was 'based on an affidavit so lacking in indicia of probably cause as to render official belief in its existence entirely unreasonable.'" *Id.* (quoting *Malley*, 475 U.S. at 341; *United States v. Leon*, 468 U.S. 897, 923 (1987)). The threshold for establishing this exception to qualified immunity is high, and there is a presumption that the magistrate is more qualified than the police officer to make a probable cause

11

determination. *Malley*, 475 U.S. at 346, n. 9. Thus, "it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable." *Id.* However, if no reasonably competent officer would have requested the warrant, the officer "cannot excuse his own default by pointing to the greater incompetence of the magistrate." *Id.* The Supreme Court predicted, "'[t]he occasions on which this standard will be met may be rare . . . .'" *Kiesling v. Holladay*, 859 F.3d 529, 533 (8th Cir. 2017) (quoting *Messerschmidt*, 565 U.S. at 556).

In the instant case, Defendants assert the affidavit contained sufficient information to establish probable cause. Defendants contend Defendant Minor received information from several cooperating individuals that Plaintiff regularly used crack cocaine in his home, which information he conveyed to Defendant Baker. In addition, a trash pull at Plaintiff's residence revealed a quart size jar containing a white residue which tested positive for cocaine in three field tests. Defendants argue the officers acted objectively reasonably in relying on the magistrate judge's determination of probable cause because the hearsay statements provided to Defendant Minor were corroborated by the Defendants' independent investigation.

"To be valid, a search warrant must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband, or a person for whose arrest there is probable cause may be found in the place to be searched" *Walden*, 156 F.3d at 870. Probable cause may be found in hearsay statements from confidential informants corroborated by independent investigation. *Id*. (citation omitted).

Here, the uncontested facts show Defendant Minor received information from several sources that Plaintiff used crack cocaine in his home. He relayed this information to Defendant

12

Baker, who, with the help of Defendants Minor and McPike, conducted an independent investigation yielding a glass jar from a trash pull which tested positive three times for cocaine in NARTEC field tests. The Court finds the affidavit and warrant application was not "lacking in indicia of probable cause." *Morris v. Lanpher*, 563 F.3d 399, 402 (8th Cir. 2009) (internal quotation omitted) (finding an affidavit reciting he heard a witness identify the possible assailants, gathering identifying evidence linking assailants to an address, and seeing witnesses identify the assailant in a photo lineup entitled police officers to qualified immunity); *see also Kiesling*, 859 F.3d at 535-36 (holding it was not unreasonable for defendant officer to believe his affidavit established sufficient probable cause for the warrant where a probability existed that the items seized would aid in the prosecution of the criminal act). While Plaintiff challenges Defendant Baker's credibility based upon his false police call in another case, the Eighth Circuit has held "where the affiant's statements are 'at least partially corroborated, attacks upon credibility and reliability are not crucial to the finding of probable cause.'" *United States v. Lucca*, 377 F.3d 927, 932 (8th Cir. 2004) (quoting *United States v. Humphreys*, 982 F.2d 254, 258–59 (8th Cir.1992)).

Plaintiff further contends Defendants are not entitled to qualified immunity because Defendant Baker's assertions in the affidavit were complete fabrications devoid of supporting facts for the purpose of political retaliation.[6] "A warrant based upon an affidavit containing

---

[6] Plaintiff asserts Defendants have a history of terrorizing city employees with unfounded investigations that lead nowhere except to punish political opponents and that Defendants manufactured evidence in this case to punish Plaintiff. Other than conclusory allegations and the opinion of the City's mayor that the PCSD publicly lodges baseless allegations against city officials without taking criminal action, Plaintiff presents no evidence showing a deliberate or reckless falsehood by Defendant Baker and the other PCSD Defendants to punish political opponents. (Niedner Dep. 114:23-115:6, ECF No. 56-4) In fact, Plaintiff acknowledges in his memorandum in support of his motion for summary judgment that evidence regarding the political animus between the PCSD and the City of Louisiana, Missouri is not relevant to the

'deliberate falsehood' or 'reckless disregard for the truth' violates the Fourth Amendment" and subjects the officer who presented the affidavit to liability under § 1983. *Bagby*, 98 F.3d at 1098 (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). "However, a showing of deliberate or reckless falsehood is not lightly met, and mere allegations of deliberate or reckless falsehoods are insufficient." *Schaffer v. Beringer*, 842 F.3d 585, 593 (8th Cir. 2016) (internal quotation marks and citations omitted).

In the present case, the record shows Defendant Minor provided information to Defendant Baker on January 12, 2016 that Plaintiff regularly used crack cocaine. Plaintiff does not dispute that Defendant Minor provided such information. Based upon this, Defendants conducted an independent investigation which resulted in finding a glass jar which tested positive for cocaine in three separate field tests. While Plaintiff challenges the reliability of the cooperating individuals, he fails to show Defendant Baker's statement in the affidavit that he received the information is false. Even if the reliability of the witnesses is questionable, the information was corroborated by trash pull which found the glass jar containing a white substance and tested positive for cocaine three times.

While Plaintiff claims Defendants are lying and presents another officer's opinion that photos of the test results indicated a common household item, not cocaine, the Court finds the three positive field tests are sufficient to show the veracity of Baker's affidavit. *See United States v. Allebach*, 526 F.3d 385, 387 (8th Cir. 2008) (finding a reasonable magistrate would conclude materials found in the trash, which included a film canister and two plastic bags with

---

motion for summary judgment. (ECF No. 50 p. 8) During the hearing, the parties both agreed that a hostile political environment exists between county and city. However, this environment does not meet the required showing of deliberate or reckless falsehoods by Defendants as political retaliation to overcome qualified immunity.

white residue, were sufficient to establish probable cause of cocaine possession and use in the defendant's residence); *United States v. Briscoe,* 317 F.3d 906, 908 (8th Cir. 2003) (holding evidence of marijuana seeds and stems found in defendant's garbage were sufficient, standing alone, to establish probable cause).

Plaintiff's primary argument against qualified immunity rests on the conclusion that Defendants are liars. Plaintiff bears "'the burden of proving the intentional or reckless inclusion of false statements in a warrant affidavit.'" *Morris*, 563 F.3d at 403 (quoting *United States v. Ozar,* 50 F.3d 1440, 1443 (8th Cir.1995)). "[I]f defendant's bad motive is relevant to the § 1983 claim, plaintiff may defeat summary judgment on qualified immunity grounds by producing specific, nonconclusory support for the claim of unconstitutional motive." *Bagby*, 98 F.3d at 1098. Plaintiff "may not respond simply with general attacks upon the [Defendants'] credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford–El v. Britton,* 523 U.S. 574, 600 (1998). In this case, however, Plaintiff's Complaint and briefs are filled with conjecture and inferences, and the Court finds his conclusory allegations do not rise to the level of specific, nonconclusory support required to overcome qualified immunity. Even construing disputed facts in Plaintiff's favor, the Court "may not infer bad motive absent even a scintilla of material fact supporting that inference." *Morris*, 563 F.3d at 403. Thus, the Court concludes Defendants are entitled to qualified immunity in their individual capacities, and the Court grants summary judgment in their favor.[7]

---

[7] Because Defendants are entitled to qualified immunity based on the properly supported affidavit and subsequent search warrant, the Court will not address the argument Defendants Korte, Minor, and Sheppard are entitled to qualified immunity based on their lack of participation in the search.

### B. Claims against Sheriff Korte in his Official Capacity

Defendant Korte correctly states Plaintiff has failed to demonstrate he had a custom, practice, or policy of validating "obviously insufficient affidavits which rest on alleged statements of unidentified informants without any evidence of their credibility, as well as conclusory statements about unidentified test results." (Pl.'s Reply in Supp. of Pl.'s Mot. for Summ. J. p. 4 n. 1, ECF No. 57) Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). To state a claim against a municipality or a municipal official in his or her official capacity, plaintiff must allege that a policy or custom of the government entity is responsible for the alleged constitutional violation. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690–91 (1978). Liability under § 1983 "for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy; (2) an unofficial custom; or (3) a deliberately indifferent failure to train or supervise. *Atkinson v. City of Mountain View,* 709 F.3d 1201, 1214 (8th Cir. 2013) (quotation marks and internal citations omitted).

Here, Plaintiff baldly asserts that Defendant Korte, as Sheriff of PCSD, employs a policy of validating insufficient affidavits for search warrant applications. However, Plaintiff has failed to set forth any evidence which demonstrates an official policy or unofficial custom of violating Fourth Amendment rights. "For a municipality to be liable, a plaintiff must prove that a municipal policy or custom was the 'moving force [behind] the constitutional violation.'" <u>Mettler v. Whitledge</u>, 165 F.3d 1197, 1204 (8th Cir. 1999) (quoting *Monell*, 436 U.S. at 694).

16

The Court thus finds no genuine issue of material fact exists regarding whether there was a policy or custom of unconstitutional misconduct by Defendant Korte, and summary judgment in favor of Defendant Korte in his official capacity is warranted.

### III. CONCLUSION

Based on the undisputed material facts and the record as set forth above, the Court finds Defendants are entitled to qualified immunity on Plaintiff's § 1983 claims of unreasonable search and seizure against Defendants in their individual capacity. Further, summary judgment in favor of Defendant Korte in his official capacity as Sheriff of the Pike County Sheriff's Department is warranted. Because Defendants are entitled the summary judgment on the basis of qualified immunity, the court need not address Plaintiff's cross motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Joint Motion for Summary Judgment (ECF No. 46) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff James Graham's Motion for Summary Judgment (ECF No. 49) is **DENIED.**

A separate Judgment will be filed with this Memorandum and Order.

Dated this 1st day of November, 2019.

_E. Richard Webber_ (signature)

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE